Matter of Tyler F. (2025 NY Slip Op 03965)

Matter of Tyler F.

2025 NY Slip Op 03965

Decided on June 27, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

mem
ad4
Matter of Tyler F.
2025
ny
03965
Mot. 262/25 CAF 24-00557
This opinion is uncorrected and subject to revision before publication in the printed Official Reports.
Decided on June 27, 2025
[*1]MOTION CA 25-00592. IN THE MATTER OF THE APPLICATION OF TYLER F., AS PARENT, FOR LEAVE TO CHANGE THE NAME OF H.E.F. TO C.E.F. - Motion pursuant to CPLR 5704 (a) to vacate ex parte order, grant application for name change, and seal record granted. Memorandum: Petitioner, the father of a seven-year-old child, moves via order to show cause pursuant to CPLR 5704 (a) (motion) seeking an order vacating an ex parte order (order) denying the application of petitioner to change the child's first name, granting that application, and sealing the record. Petitioner also seeks review of the subsequent order that denied a motion for, inter alia, leave to renew and reargue the application (prior motion). We agree with petitioner that Supreme Court erred in denying the application.
Pursuant to Civil Rights Law § 63, a petition seeking to change an infant's name "shall" be granted where the "petition is true," "there is no reasonable objection to the change of name proposed," and "the interests of the infant will be substantially promoted by the change" (id.; see Matter of Niethe [McCarthey-DePerno], 151 AD3d 1952, 1953 [4th Dept 2017]; Matter of Eberhardt, 83 AD3d 116, 121 [2d Dept 2011]). Here, there are no objections to the application, which is expressly supported by the mother as well as petitioner. The court made no adverse findings with respect to the credibility of the parents' hearing testimony in support of the application. The issue therefore is whether the record establishes that " 'the interests of the infant will be substantially promoted by the change' " (Niethe, 151 AD3d at 1953). We conclude that the totality of the circumstances, including the relevant Eberhardt factors, weigh in favor of granting the application (see Eberhardt, 83 AD3d at 123-124; see also Niethe, 151 AD3d at 1953).
The relevant factors to be considered on an unopposed application to change an infant's first name include "(1) the extent to which a child identifies with and uses a particular [ ]name; (2) the child's expressed preference, if of sufficient age and maturity to articulate a basis for preferring a particular [ ]name; . . . (3) whether the child is known by a particular [ ]name in the community; . . . and (4) the difficulties, harassment, or embarrassment that the child may experience by bearing the current or proposed [ ]name" (Eberhardt, 83 AD3d at 123-124; see generally Matter of Segool v Fazio, 167 AD3d 1508, 1509 [4th Dept 2018]).
With respect to the first and third factors, the record reflects that the child currently uses the new name and has done so for the last several years. All of the child's teachers use the new name, and the child's school has gone so far as to create a new file for the child utilizing the new name. In essence, everywhere the parents could voluntarily change the child's name, they have done so.
With respect to the second factor, the evidence submitted in support of the application establishes that the new name was chosen by the child in conjunction with his parents, who also sought counsel from school professionals, as a name more consistent with the child's gender identity. The fourth factor-i.e., "the difficulties, harassment, or embarrassment that the child may experience by bearing the current or proposed [ ]name"-also weighs heavily in favor of permitting the name change inasmuch as the discrepancy between the child's chosen name and legal name was causing the child anxiety in certain situations and was a source of bullying at school. The alleviation of such discomfort is in the substantial interest of the child particularly where, as here, there is no objection in the record to the name change. Moreover, the parents wish to create uniformity between the child's preferred name and various insurance information and other identifying documentation.
Inasmuch as all four factors weigh in petitioner's favor, we grant the motion insofar as it seeks to vacate the order and the grant of the application for a name change. We also take this opportunity to remind the court that "[t]he courthouse and courtroom must convey to the public that everyone who appears before the court will be treated fairly and impartially" (Advisory Comm on Jud Ethics Op 21-09 [2021] [internal quotation marks omitted]). Care must therefore be taken "to avoid any appearance of hostility to an individual's gender identity or gender expression" or language that could be construed, intentionally or not, as a manifestation of bias or prejudice (id.). Here, the scope of the application before the court was limited to a change of name and no declaration of gender was requested (see Matter of Anonymous, 106 AD3d 1503, 1503-1504 [4th Dept 2013]), and we cannot condone the court's decision not to use the pronouns associated with the child's gender identity, as acknowledged by the child and his parents before the court, or the court's more concerning reference to the child as "it" in the challenged order.
In light of our determination, we need not address whether the court erred in denying petitioner's prior motion. Finally, we also grant the motion insofar as it seeks to seal the record. (Order of Supreme Court, Genesee County, Diane Y. Devlin, J. - Application for Name Change).