OPINION OF THE COURT
Jerome C. Gorski, J.
This matter comes before this court by way of an order to show cause brought by defendant to require plaintiff to refer to their child, Thomas, with his properly given surname, Van Or- *919 den. Defendant also asks that plaintiff be required to use said name in all dealings with the child’s school, day care, medical care, and the like. Defendant also asks for a modification of the child support provisions of the parties’ property settlement agreement. Plaintiff has brought a cross motion to dismiss the petition herein, and enforce the child support obligations of the defendant pursuant to the parties’ property settlement agreement.
The parties were married in 1989, and Thomas Van Orden, an issue of the marriage, was born on April 5, 1990. The plaintiff began a divorce action in 1992, and the parties entered into a property settlement agreement dated October 1, 1992 and were eventually divorced on September 1, 1993. Plaintiff alleges that since their separation in 1992, she has informally and unofficially been referring to their son with the surname “Githens”. The parties’ separation in 1992 was such that defendant actually relocated out of the area, to northwestern New Jersey, where he is currently a schoolteacher. At the time of the separation, defendant was not yet working.
The custody provision of the property settlement agreement states: “Plaintiff shall enjoy sole custody of the parties’ child whose name and date of birth is as follows: thomas Andrew van orden, born April 15, 1990”. The property settlement agreement also specified the child support and related provisions. Essentially, the parties agreed to opt out of the Child Support Standards Act (Domestic Relations Law § 240 [1-b]; Family Ct Act § 413 [CSSA]) due to the fact that defendant was unemployed at the time of the execution of the agreement. The parties anticipated, however, that once the defendant was employed, they would abide by CSSA. Additionally, the 1992 agreement provided that defendant would reimburse plaintiff for half of the cost of plaintiff’s increased health insurance premium which she incurred as a result of having to place the parties’ child on her health insurance policy.
In 1995, the parties entered into a modification of the child support provisions, agreeing to exempt from consideration of the CSSA child support calculation up to $6,000 per year of income defendant may have earned from coaching or nonteaching income. Obviously, defendant was employed at that time as a teacher, as he is currently. In that modification agreement, there was no resolution of the surname controversy, nor the issue regarding reimbursement for health insurance.
The plaintiff claims that she and defendant agreed to informally use the surname “Githens” for their son. Defendant *920 vigorously denies this allegation. Defendant contends that plaintiff unilaterally undertook to use her surname for their son, and it became more than an informal usage. It was used at day care, at the doctor, and now, for school purposes, religious purposes, and essentially, in all aspects of his life.
Defendant urges the court to require plaintiff to use the child’s given surname of Van Orden. Plaintiff, however, believes that the court does not have the power to regulate her informal use of the child’s surname.
If informal use of a name for the child was the issue, then perhaps this court would not have the power to regulate plaintiff’s behavior. However, in this matter, it is much more than the selection of a name for occasional use. Plaintiff has, and admits that she has, held out to the world that her son’s surname is Githens. Plaintiff has registered him in school and with health care providers under that name, and is in fact claiming that the resumption of use of his given surname is not in his best interests. Plaintiff has effectively changed the child’s name without the protections afforded the child and the father of the child pursuant to Civil Rights Law article 6. That statute requires that for an adult to change the name of an infant, that person must show that the best interests of the child would be “substantially promoted” by the change. (Civil Rights Law § 63.) Although the plaintiff does not specifically seek legal, formal name change pursuant to said statute, the effect of the court’s inaction in light of the pervasiveness of this “informal” situation would be to permit the change.
The defendant has paid child support for the benefit of the child since the divorce, as well as a share of the child-care expenses, and has endeavored to maintain a relationship with the child despite obstacles, some self-created. Defendant has, therefore, voiced a reasonable objection to the name change under the circumstances. Under these circumstances, name changes wherein the mother’s surname is substituted for that of the father are rarely granted. (See, Rio v Rio, 132 Misc 2d 316 [1986]; Matter of Goldstein, 104 AD2d 616 [2d Dept 1984].)
Failure to exercise the court’s equity powers and issue an injunction prohibiting plaintiff from “unofficially” and/or “informally” using a surname other than that given the child at birth is tantamount to granting a name change. The defendant’s request that the court direct the plaintiff to use the child’s lawful surname “Van Orden” is granted, and she shall correct any registry of the child that lists any other name. This shall include the child’s school, doctor, day care, and the like.
*921 With regard to the child support issues, it is noted that the parties revisited the child support and visitation provisions in 1995, with the benefit of counsel, and agreed to a document which modified the 1992 property settlement agreement. At that time, defendant was employed as a teacher, essentially the same job that he currently holds. There has been no financial change of circumstances since that time that would support the court setting aside any portion of that modification. That modification reaffirmed all terms of the property settlement agreement not specifically modified therein.
In accordance with the provisions of the two documents, the defendant is required to reimburse plaintiff for one half of the premium costs incurred by plaintiff relative to her coverage of the parties’ child. The parties shall exchange whatever documents are necessary to determine this amount. This shall be retroactive to the date of divorce.
With regard to the pro rata provisions relative to uninsured costs for the last several years, the only way to determine pro rata share is for each party to disclose their annual incomes over the relevant time period. Each party shall exchange applicable W-2’s and 1099’s (if any) to determine if there are amounts due and owing either party. This court is unsure of how the birth of the plaintiff’s second child, or her second marriage effect the proportion of these premiums that were paid solely for the benefit of the parties’ child. After disclosure, the court will hold a hearing to determine if either party is indebted to the other, unless the parties are able to resolve this issue.
The court will not currently attempt to renegotiate visitation. It is not disputed that the defendant has not exercised all the visitation that he is currently entitled. The court is also aware that defendant is planning a two-week summer visitation with the child in August. I encourage the parties to reevaluate the visitation situation after that time, and either party may reapply to the court for reconsideration on this point.
Neither party shall be responsible for the other’s counsel fees.